UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY SIBLEY,** | : | Case No. 1:05CV0550 |
| | : | |
| **Plaintiff,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| v. | : | |
| | : | **ORDER** |
| **ALCAN, INC.**, *et al*, | : | |
| | : | |
| **Defendants.** | : | |

This matter arises on *Defendant Alcan Inc's Motion to Quash Service of Process* (Doc. 19) ("Motion to Quash"), in which Alcan, Inc. ("Alcan") seeks to quash the most recent service of process attempted by Plaintiff. Plaintiff has filed an opposition (Doc. 21), and Alcan has replied (Doc. 22). For the reasons articulated below, Alcan's Motion to Quash is **DENIED** and service of process is deemed to have been effectuated.

**I.  FACTUAL BACKGROUND**

Alcan is a corporation whose principal place of business is in Quebec, Canada. Plaintiff is a former employee of Alcan and/or Defendant Alcan Management Services USA, Inc. ("AMS").[1] Plaintiff was terminated approximately three months after beginning his employment. Thereafter,

---

[1] Plaintiff contends that he was employed by Alcan, but received paychecks from AMS. Alcan denies employing Plaintiff and having any businesses in the United States. Plaintiff's employment status, however, is not material to the instant motion.

Plaintiff filed this action alleging tort and contract claims against Alcan and AMS based on his termination. Plaintiff then attempted service of process on the Defendants. Only service as to Alcan is at issue here.[2]

Plaintiff first attempted service of process on Alcan on February 25, 2005 by serving AMS. On April 14, 2005, Plaintiff again attempted service on Alcan by serving Alcan Global Fabrications, Inc., a company that Alcan denies exists. Then, on May 13, 2005, Plaintiff attempted service on Alcan by serving Alcan Corporation, a subsidiary of Alcan. Sometime after May 13, 2005, Plaintiff attempted the service of process at issue in the present motion. In that regard, Plaintiff sent by registered mail a copy of the Complaint and Summons (*i.e.,* process) to Alcan's headquarters in Quebec, Canada.[3]

## II. DISCUSSION

In support of its motion, Alcan argues that Plaintiff's most recent attempt at service of process to Alcan's corporate headquarters in Quebec, Canada by <u>certified mail</u> is improper under the *Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* ("Hague Convention" or "the Convention") and, notwithstanding that argument, Quebec law. Alcan alternatively argues that, even if permitted by the Hague Convention, service of process by certified mail is not permitted under Quebec law, which Alcan believes is made applicable by Federal Rule of Civil Procedure 4(f)(2)(A).

In sum, Alcan asserts that the Sixth Circuit considers registered mail an improper means for

---

[2] The facts relating to service of process on AMS are omitted because they are immaterial to the Court's resolution of the instant motion.

[3] "Registered mail" and "certified mail" are used interchangeably herein.

2

service of process under the Hague Convention. Alcan cites numerous cases from other circuits and other districts for the proposition that service by registered mail to a defendant in a foreign country is not an appropriate means for service under the Hague Convention. *See e.g., Nuovo Pignone, SPA v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002); *Uppendahl v. American Honda Motor Co., Inc.*, 291 F. Supp.2d 51 (W.D. Ky. 2003); *Wilson v. Honda Motor Co.,* 776 F.Supp. 330 (E.D. Tenn. 1991). Notably absent from Defendant's motion, however, are cases from the U.S. Supreme Court, the Sixth Circuit Court of Appeals, or this Court. Alcan argues that personal service must be attempted first; then, and only with leave of court, can mail service be deemed permissible.

In response, Plaintiff argues that service of process by registered mail is proper under Article 10(a) of the Hague Convention, and that Canada affirmatively has expressed that it does not object to service in such a manner. As did Alcan, Plaintiff cites numerous cases in support of its proposition. *See e.g.*, *R. Griggs Group Ltd v. Filanto, SPA,* 920 F. Supp. 1100 (D. Nev. 1996); *Ackermann v. Levine*, 788 F.2d 830 (2nd Cir. 1985); *Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004); *Taft v. Moreau*, 177 F.R.D. 201 (Vt. 1997); *Heredia v. Transport S.A.S., Inc.,* 101 F. Supp.2d 158 (S.D.N.Y. 2000); *Curcuruto v. Cheshire,* 864 F. Supp. 1410 (S.D. Ga. 1994). Plaintiff further argues that the Court should determine the adequacy of service by looking to the Federal Rules of Civil Procedure alone, and not Quebec law. Plaintiff also argues that service was effectuated upon Alcan *via* service upon certain of Alcan's domestic subsidiaries. Given the Court's conclusion herein, the Court need not address whether service upon its domestic subsidiary constitutes service of process upon Alcan.

**A.     Analysis**

As noted by the Supreme Court, the Hague Convention "sought to provide a simpler way to

3

serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698 (1988). It attempted to do so by having each signatory country establish a Central Authority that would serve to receive requests for service and to proceed in conformity with Articles 3 through 6 of the Convention to effectuate service. At the same time, the Convention provided <u>alternative methods</u> of effectuating proper service. *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699. For example, Articles 8 through 11 provide alternative means for service of process abroad. *R. Griggs Group LTD v. Filanto Spa,* 920 F.Supp. 1100, 1105 (D. Nev. 1996).

The provision at issue in this case is Article 10(a), which states that, "[p]rovided the State of destination does not object, the present Convention shall not interfere with the freedom to <u>send</u> judicial documents by postal channels, directly to persons abroad." *See* Article 10(a) (emphasis added). Provided that Canada has not objected to Article 10(a), and that the phrase "send judicial documents" includes service <u>of process *via* registered mail</u>, then Article 10(a) of the Convention permits the method of service made by the Plaintiff in this case. Because both parties agree that Canada has not objected to Article 10(a), the only issue presented is whether or not the phrase "send judicial documents" captures <u>service of process</u> by registered mail directly from the Plaintiff.

Upon the Court's own research and its examination of the parties' papers, it is clear that the Sixth Circuit has not resolved this issue, and that clear disagreement exists among the various courts, both within and outside this circuit, that have addressed it. Accordingly, in addition to the cases cited by the parties, the Court has reviewed various sources, primary and secondary, to inform its decision on this matter.

4

Though it disagrees with their conclusions, the Court first considers the decisions of the courts within the Sixth Circuit. The district courts of Tennessee and the Western District of Kentucky have held that Article 10(a) refers to a method of sending documents <u>after</u> service of process has been effectuated through the Central Authority. *See Wilson v. Honda Motor Co., LTD.,* 776 F. Supp. 339, 342 (E.D. Tenn. 1991); *Cupp v. Alberto-Culver USA, Inc.,* 308 F. Supp.2d 873, 880 (W.D. Tenn. 2004); *Uppendahl v. American Honda Motor Co., Inc.*, 291 F. Supp.2d 531 (W.D. Ky. 2003). In reaching that conclusion, those courts utilized a two-step analysis to interpret the term "send." First, they looked to the language of the statute itself and determined that the ordinary meaning of the word "send" (*i.e.* dispatch or transmit) should be applied absent express legislative intent to the contrary. *Uppendahl,* 291 F. Supp.2d at 533. Second, they noted that subsections (b) and (c) of Article 10 used the term "service," while "send" was used in subsection (a). The courts opined that the use of "send" instead of "service" in subsection (a) was deliberate and leads to the conclusion that Article 10(a) does not include service of process. *Wilson*, 776 F. Supp. at 342.

This Court undertakes a similar analysis, but reaches a different conclusion. While a term in a treaty normally should be given its plain, ordinary meaning, that meaning must be gleaned in light of the context in which it is used-here, in the context of Hague Convention, and specifically Article 10 thereof. The drafters' intent is that "send judicial documents," as used in Article 10(a), includes service <u>of process</u>. The *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or*

*Commercial Matters*[4] (the "Handbook"), authored by members elected by the signatory countries of the Hague Convention, is instructive. The Handbook notes the varying interpretations of Article 10(a) in the United States and points out that the decisions holding that Article 10(a) does not apply to service of process "contradict what seems to have been the implicit understanding of the delegations . . . and legal literature on the Convention and its predecessor treaties."[5] The Handbook concludes, therefore, that the Convention intends Article 10(a) to include service of process.

The Handbook's conclusion is consistent with the Supreme Court's view of the Convention's purpose, as outlined in *Volkswagenwerk Aktiengesellschaft*, 486 U.S. 694 (1988). Clearly, allowing service of process by registered mail provides an inexpensive and simpler method for service abroad, without running the risk that defendants will not receive actual notice of litigation. Because registered mail requires the recipient's signature, the notice issue is resolved.

It is undisputed that the Hague Convention provides for methods of service other than using a Central Authority. *See* Article 8 through Article 11; *R. Griggs Group LTD v. Filanto Spa,* 920 F.Supp. 1100, 1105 (D. Nev. 1996). Articles 10(b) and 10(c) allow for judicial officers or interested parties to effectuate service of judicial documents through a judicial officer or other competent persons of the State of origin. "If Article 10(a) were intended only to preserve the right to use postal channels for non-service correspondence, it would be out of place in Article 10, chapter 2, and indeed

---

[4] Hague Conference on Private International Law, *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* (2nd ed. 1992).

[5] Handbook, p. 44.

in the Hague Convention itself." *Id.* at 1104.[6] Interpreting the word "send" as narrowly as do those courts finding it does not encompass service of process would be contrary to the drafters' intent.

The Handbook's conclusion is further consistent with various cases that have found Article 10(a) to permit service by registered mail. *Heredia v. Transport S.A.S., Inc.,* 101 F. Supp.2d 158 (S.D.N.Y. 2000), is instructive in this regard. In that case, plaintiff delivered the complaint and summons to the New York Secretary of State's Office to send to the defendant. Under the applicable state law, "service of summons shall be made by mailing a copy to the Secretary of State . . . and such service shall be sufficient service upon such non-resident provided that a copy of the summons and complaints are sent by or on behalf of the plaintiff to the defendant by registered mail." *Heredia*, 101 F. Supp.2d at 160-161. The defendant, a Quebec corporation, argued improper service of process under the Hague Convention.

In determining whether Article 10(a) authorized service of process *via* registered mail, the *Heredia* court undertook a two-pronged inquiry. First, it determined that the freedom to send judicial documents included service of process. *Heredia,* 101 F.Supp.2d at 161 (citing *Ackermann v. Levine,* 788 F.2d 830, 838-39 (2nd Cir. 1986)). Second, it noted that Canada had not objected to Article 10(a). *Id.* As a result, the court held that service of process by registered mail in Quebec was adequate under the Convention. The *Heredia* court did not address the issue of whether Quebec law

---

[6] Additionally, the United States Department of State has taken the position that Article 10(a) captures service of process. In a letter dated March 13,1990, addressed to the Administrative Office of the United States Courts and the National Center for State Courts, Alan J. Kreczko, Deputy Legal Advisor of the State Department, stated that the "Court of Appeals in *Bankston* is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a Summons and Complaint by registered mail to a defendant in a foreign country." *See* 30 I.L.M. 261 (1991).

7

applied, presumably because service of process was adequate under the Hague Convention, therefore fulfilling the requirements of Federal Rule of Civil Procedure 4(f).

### III. CONCLUSION

Recognizing that a division of authority exists in connection with the issue presented, this Court holds that service of process by registered mail from the Clerk of Courts of the district in which a case is filed to a Canadian defendant is permitted by Article 10(a) of the Hague Convention. Canada is a signatory to the Convention and has not objected to Article 10. As such, in so far as the Court finds herein that Article 10(a) permits service of process by registered mail, a Canadian defendant who receives a summons and complaint by registered mail from the Clerk of Courts in the district in which the underlying case is pending is considered served for purposes of the relevant court's exercise of jurisdiction over that defendant.[7] The Court need not turn to Quebec law for additional guidance, as both the Federal Rules of Civil Procedure and the Hague Convention provide

---

[7] Some courts, including this one, have taken the position that, though registered mail effectuates service of process under the Hague Convention, such service must still comply with Federal Rules of Civil Procedure 4. Under Rule 4(e)(1), service of process may be effectuated through the procedures prescribed by state law. In Ohio, service of process by registered mail is authorized when it is <u>sent through the Clerk of Courts</u>. *See* Northern District of Ohio local rule 4.2; Ohio Rules of Civil Procedure 4.1 and 4.3(B). While Plaintiff did not serve Alcan *via* the Clerk of Courts, Alcan has not objected to that fact. That issue is, therefore, waived.

ample authority for service of process upon a Canadian defendant *via* registered mail.[8]

Accordingly, Alcan's Motion to Quash is **DENIED** and service of process is hereby deemed effectuated upon Alcan.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley<br>**KATHLEEN McDONALD O'MALLEY**<br>**UNITED STATES DISTRICT JUDGE**

**Dated: November 15, 2005**

---

[8] Alcan contends that Federal Rules of Civil Procedure 4 requires the Court to consult Quebec law in determining adequacy of service of process. This Court disagrees. Rule 4(f) provides three disjunctive methods for service abroad. First, service may be effectuated by any internationally agreed means reasonably calculated to give notice. Second, if there is no internationally agreed means, or when the international agreement provides for "other" means of service, then service may be effectuated by a) laws of the foreign country, b) as directed *via* a letter of rogatory or c) personal service or registered mail by the Clerk unless prohibited by the laws of the foreign country. Third, other means not prohibited by international agreements and ordered by the court may be used for service abroad. Based on the first provision alone, Plaintiff's service of process is adequate because it complied with the Hague Convention. Since Rule 4(f) is disjunctive and 4(f)(1) is satisfied, the issue of whether or not Quebec law should be consulted pursuant to Rule 4(f)(2) is moot.